# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND
### Baltimore Division

## CASE NO. 16-CV-03672-JKB

TAMIKA L. JOHNSON, an individual,
on behalf of herself and all others similarly
situated,

       Plaintiff,

vs.                                                                          **CLASS ACTION**

BIERER LAW GROUP, P.A.,
a Maryland professional association,

       Defendant.

_____/

## MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT AGREEMENT

Plaintiff, Tamika L. Johnson, an individual, on behalf of herself and all others similarly

situated ("Class Representative"), pursuant to Rule 23, Fed. R. Civ. P., by and through her

undersigned attorneys, hereby respectfully moves this Honorable Court for an order granting

final approval of the Class Action Settlement Agreement in this matter, and in support would

show as follows:

      1.      In the instant action, the Class Representative filed a Complaint against

Defendant, Bierer Law Group, P.A., a Maryland professional association, for violation of 15

U.S.C. §1692, *et sequi*, known more commonly as the "Federal Fair Debt Collection Practices

Act" ("FDCPA").  In particular, the Class Representative has alleged that Defendant violated the

FDCPA by using a collection communication ("Collection Letter") which failed to properly

advise consumers of their right to dispute and validate debts.

      2.      After extensive arms-length negotiations, including a lengthy settlement

conference before the Honorable United States Magistrate Judge J. Mark Coulson, the parties

reached a Class Action Settlement Agreement ("Settlement Agreement"), a copy of which has

been previously filed with the Court.

3.      On May 9, 2017, this Court entered a Preliminary Approval Order of

the Class Action Settlement ("Preliminary Approval Order") [DE 19].

4.      In support of the instant application, the Class Representative has filed the

following declarations/affidavits:

(a)   Affidavit of Bailey Hughes, Case Manager, First Class, Inc. ("Settlement

Administrator Report") [DE 28-1];

(b)   Declaration of Robert W. Murphy, Esquire ("Murphy Declaration") [DE

16-3]; and

(c)   Declaration of Kathleen P. Hyland, Esquire ("Hyland Declaration") [DE 16-

3].

5.      As detailed below, the Settlement Agreement is fair, reasonable and provides

substantial benefits to the Class and should be given final approval by this Court in all respects.

## MEMORANDUM OF LAW

## I. INTRODUCTION

### A.   *Overview of FDCPA Class Action Complaint*

As detailed in the Complaint, Ms. Johnson was a debtor under a student loan ("Johnson

Student Loan") that was placed into default status for monies purportedly owed by Ms. Johnson

to National Collegiate Student Loan Trust ("NCSLT").  After being retained by NCSLT, on or

about November 9, 2015, Defendant sent Ms. Johnson the Collection Letter for the purpose of

collecting the Johnson Student Loans. In the Collection Letter, Defendant failed to provide a

disclosure of the rights of Ms. Johnson and all other similarly situated consumers in a manner which would not confuse or frustrate the least sophisticated consumer of his/her rights under 15 U.S.C. §1692g. In particular, the FDCPA violations by Defendants include but are not limited to the following:

a.   Failing to inform consumers that the debt validation procedure under 15 U.S.C. §1692g(a)(4) required that disputes be made in writing;

b.   Failing to inform consumers that the debt collector would provide the consumer with the name and address of the original creditor, if different from the current creditor, upon the consumer's written request within a 30-day validation period, in contravention of 15 U.S.C. §1692g(a)(5); and

c.   Improperly disclosing the time period for the right to request debt validation as commencing "within 30 days" of the Collection Letter rather than within 30 days "after receipt," in violation of 15 U.S.C. §1692g(a)(4).

**B.  Procedural History**

*1.  Description of Fact-Finding Efforts of Class Counsel*

Immediately after initiating the instant proceeding, Class Counsel sought from Defendant disclosures with respect to both certification and merits.  With respect to certification, Class Counsel sought information germane to satisfying the requirements of Rule 23, Fed.R.Civ.P. — namely, numerosity, typicality and commonality.  Class Counsel encouraged Defendant through counsel to provide informal class certification disclosures to obviate the expense and delay of extensive litigation.

To the credit of Defendant and its counsel, Defendant provided such disclosures as expeditiously as possible.  Through such disclosures, Defendant provided sufficient information

concerning merits and certification to satisfy the due diligence of Class Counsel in determining

an adequate statutory recovery under 15 U.S.C.§1692k [Murphy Declaration - ¶¶3-5].

### 2. Settlement Process

After the filing of this action, counsel for the respective parties had several lengthy

discussions concerning the settlement of this matter.  On Friday, January 22, 2017, the parties

and counsel met before Magistrate Judge J. Mark Coulson for the purpose of a settlement

conference.  As a result of the settlement conference, the parties entered into a Class Action

Term Sheet ("Term Sheet") which served as a framework for drafting the settlement documents,

including the class action settlement agreement, preliminary/final approval applications,

proposed orders, and class notice.

After reaching settlement in principle, the Parties negotiated the detailed final terms of

the proposed Settlement Agreement now before the Court. The drafting of the settlement

documents to be submitted to the Court for approval occurred over a period of several weeks,

during which time multiple revisions were made by Class Counsel. As a result of the settlement

efforts, the parties filed a Joint Motion for Preliminary Approval of Class Action Settlement [DE

16] which the Court granted on May 9, 2017 [DE 19].

### 3. Terms of Settlement

Pursuant to the Settlement Agreement, the Parties have stipulated for settlement purposes

only as follows:

Settlement Class. The Settlement Class consists of approximately two thousand six-

hundred seventy (2,670) persons:

> All person (i) to whom letters ("Collection Letter") in the same or substantially
> similar form as Exhibit "A" to the Complaint were sent by Bierer Law Group (ii)
> in an attempt to collect a debt which, according to the nature of the creditor or the

debt, or the records of the creditor or Bierer Law Group, was incurred for personal, family, or household purposes, (iii) which were not returned undelivered by the U.S. Post Office (iv) during the one year period prior to the filing of the Complaint in this action to the date of preliminary approval of the Class Action Settlement Agreement.

[Settlement Agreement - ¶6].

Based on 376 claim forms, each participating Class Member will receive approximately $50.40.

<u>Payments to Class Members and Class Representative Incentive Award</u>. Defendant will provide monetary relief to Class Members, as follows:

Within ten (10) days after entry of the Final Order, Defendant will pay Twenty-Five Thousand Five Hundred Dollars ($25,500.00) to the Settlement Administrator, who will establish a fund ("Class Fund"). From the Class Fund, the Settlement Administrator shall pay Three Thousand Five Hundred Dollars ($3,500.00) to the Plaintiff, which is in addition to her recovery as a member of the Class. The remaining Class Fund of $22,000.00 shall be divided on a *pro rata* basis among the Class Members who timely return claim forms to the Settlement Administrator, after payment of the Settlement Administration Costs, through issuance of checks from the Class Fund ("Settlement Check").   Any person who timely and effectively requests exclusion from the Settlement shall not be entitled to a Settlement Check. Under no circumstances will any Class Member receive more than a single Settlement Check for more than One Thousand Dollars $1,000.00). Settlement Checks to the Class Members shall expire ninety (90) days from the date that they are issued.  To the extent that there are any funds from un-cashed, expired Settlement Checks, an amount equal to the amount of such un-

cashed checks will be paid over as a *cy pres* award to Class Counsel to be distributed to Maryland Consumer Rights Coalition, for use in the education or representation of consumers. [Settlement Agreement - ¶30].

Costs of Settlement Administration. The costs of settlement administration, including distribution and class notice ("Settlement Administration Costs"), shall be paid by the Settlement Administrator from the Class Fund created by pursuant to paragraph 30. Bierer Law Group has no responsibility for the payment of the Settlement Administration Costs and its payment obligations are limited to the payments set forth in paragraphs 30 and 31 [Settlement Agreement - ¶32].

Attorneys' Fees, Costs and Expense. Bierer Law Group shall pay the sum of Thirteen Thousand Dollars ($13,000.00) as and for the reasonable attorneys' fees, costs and expense for Class Counsel, subject to Court Approval upon application by Class Counsel. [Settlement Agreement - ¶31].

### 4.  Details of Settlement Administration

Pursuant to the Preliminary Approval Order entered herein on May 9, 2017 [DE 19], the Court approved the form of the notice to Settlement Class and further directed the Settlement Administrator to mail the notice by first class mail to the Class Members at their last known address in accordance with the Preliminary Approval Order [DE 19] and subsequent Order Granting Joint Motion for Approval of Updated Class Notice [DE 23-3]. The Class Representative has filed the Affidavit of Bailey Hughes of First Class, Inc. ("Settlement Administrator Report") [DE 28-1].

According to the Settlement Administrator Report, the Settlement Administrator followed its standard practice of processing the list through the Coding Accuracy and Support System

("CASS") and the National Change of Address ("NCOA") update process of the U.S. Postal Service using software certified by the United States Postal Service [Settlement Administrator Report - ¶ 4]. CASS allowed the Settlement Administrator to verify the address is correctly formatted for delivery and corrected zip code errors. [Settlement Administrator Report - ¶4]. The NCOA Move Update service provided current address information, if available, and any information regarding deliverability. [Settlement Administrator Report - ¶4]. Prior to mailing notice, the Settlement Administrator followed its standard practice of checking for and removing exact duplicate records within the class list, which resulted in the removal of two (2) exact duplicates from the mailing [Settlement Administrator Report - ¶6].

On June 8, 2017, notice was mailed to 2,668 Class Members by first class mail, postage prepaid, forwarding service requested. [Settlement Administrator Report - ¶7-8].

As of August 21, 2017, a total of one hundred twenty-seven (127) notices were returned as undeliverable with no forwarding address or further information provided by the United States Postal Service [Settlement Administrator Report - ¶ 9].

As of August 21, 2017, a total of five (5) notices were returned by the U.S. Postal Service with a new address and remailed [Settlement Administrator Report - ¶10].

As of August 21, 2017, three hundred seventy-six (376) valid claim forms have been received which were postmarked on or before the cut-off date of August 7, 2017 [Settlement Administrator Report - ¶13]. Nine (9) claims form have been received which were postmarked after the August 7, 2017 cut-off date, which invalidates said claim forms [Settlement Administrator Report - ¶14].

As of August 21, 2017, pursuant to the Settlement Administrator Report, the Settlement Administrator stated the following concerning its administration:

*Objections* - no objections were received; and

*Exclusions* – four requests for exclusion were received from the following

individuals:

1. Kenneth Osborne of Bowie, MD

2. Lakita Hall of Baltimore, MD

3. Rebecca K. Juratovac of Baltimore, MD

4. Rebecca Seaman of Owings Mills, MD

[Settlement Administrator Report - ¶¶11-12].

## II.  <u>STANDARD OF REVIEW OF CLASS ACTION SETTLEMENTS</u>

With respect to approval of class action settlements, Rule 23, Federal Rules of Civil

Procedure, provides in pertinent part:

> "[t]he Court must direct notice in a reasonable manner to all class members who
> would be bound by the proposal. . . the Court may approve it only after hearing
> and on finding that the settlement. . . is fair, reasonable and adequate."

Rule 23(e)(1) and (2), Fed.R.Civ.P.

The approval of a proposed class action settlement is discretionary with the district court.

*Flynn v. FMC Corporation*, 528 F.2d 1169 (4th Cir. 1975), *cert. denied,* 424 U.S. 967 (1976);

*Girsch v. Jepson*, 521 F.2d 153, 156 (3rd Cir. 1975); *Ace Heating & Plumbing Company v. Crane*

*Company*, 453 Fd. 2d 30, 34 (3rd Cir. 1971).

Courts consistently favor settlement of disputed claims. *See Williams v. First National*

*Bank*, 216 U.S. 582 (1910); *Weinberg v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *DuPuy v.*

*Director, Officer of Worker's Compensation Programs*, 519 F.2d 536,541 (7th Cir.1975), *cert.*

*denied*, 424 U.S.965 (1976).  Nowhere is this policy more appropriate than in class actions:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Id.*

*See Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir.1980); *see also, Franks v. Kroger,* 649 F.2d 1216, 1224 (6th Cir.1981) *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir.1982) (law generally favors and encourages the settlement of class actions).

### III.  LEGAL ARGUMENT

**A.  Notice to the Settlement Class Has Satisfied the Requirements of Rule 23(c)(2)(B), Fed.R.Civ.P. and Constitutional Due Process Requirements.**

*1.  The Form and Content of the Class Notice Satisfied the Requirements of Rule 23(c)(2)(B)*

Pursuant to Federal Rule of Civil Procedure 23(b)(3), the best notice practicable under the circumstances must be sent to apprise class members of the pendency of the suit and advising them of their right to opt-out under Rule 23(c). The rule further requires that the notice for a (b)(3) class concisely and clearly state in plain, easily understood language *inter alia* the nature of the action, the definition of the class certified, the right to exclude and object, and the binding effect of the class judgment. Fed.R.Civ.P. 23(c)(2)(B).

In the instant case, the Court preliminarily approved the Settlement Agreement and the proposed Notice to Class ("Settlement Class Notice"), a specimen copy of which was attached to the Motion for Preliminary Approval as Exhibit "D" [DE 16]. The Settlement Class Notice was subsequently amended for minor editorial changes and approved by the Court in its Order Granting Joint Motion for Approval of Updated Class Notice [DE 23-3]. The Settlement Class Notice provided plenary information for the Settlement Class Members to make informed choices, including the details of the settlement benefits.  *In Re: Fed. Skywalk Cases*, 97 F.R.D.

(W.D. Mo. 1982).  Under Rule 23(c)(2)(B), the notice must provide "information that a reasonable person would consider to be material and make an informed, intelligent decision whether to opt out or remain a member of the class and be bound by the final judgment." *In Re: Nissan Motor Corporation Antitrust Litigation*, 552 F.2d 1088, 1105 (5th Cir. 1977); citing with approval in *Twigg v. Sears Roebuck*, 153 F.3d 1222 (11th Cir. 1998).  The Settlement Class Notice has satisfied the requirements of Rule 23 with respect to form and content.

### 2. *The Best Notice Practicable Has Been Sent to the Members of the Class.*

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." When a potential class member's address is known or is readily available with reasonable effort, individual notice by mail is required. *Eisen v. Carlyle & Jacquelyn*, 417 U.S. 156, 173 (1974); *see also, DeCohen v. Abbasi, LLC*, 299 F.R.D. 469 (D. Md. April 17, 2014).

Rule 23 does not require the parties to exhaust every conceivable method of identifying and providing notice to the individual class members. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir.1985). As detailed in the Settlement Administrator Report, the Settlement Administrator followed its standard practice of processing the Class List through CASS and NCOA Services to obtain the best possible addresses for the Class Members prior to mail out [Settlement Administrator Report - ¶5].

Accordingly, in light of the modest settlement relief to the Class, "the best notice practicable" has been made by Defendant. This position is especially compelling as a number of the dunning letters which are the subject matter of this litigation may not have been received by the Members of the Class in the first place. *In Re: Prudential Insurance Co. of America Sales Practices Litigation*, 177 F.R.D. 216, 239 (D. N.J. 1997)["that some class members may not have

received notice evidences only that the extensive notice system was not perfect.  Due process when viewed through the lens of objectivity does not require perfection"]; *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)[in antitrust class action, notice adequate where one third of class not reached by mail].

### B.   The Proposed Settlement is Fair, Adequate and Reasonable

#### 1.   *Federal Law Supports Approval of Class Action Settlement Agreements That Are Fair, Adequate and Reasonable*.

##### *a. General Overview*

Judicial approval of class action settlements requires a two-step process.  In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible judicial approval.*"  H. Newberg, Newberg on Class Actions* (3d Ed. 1993) §11.25, p.11-37.  Once the settlement is found to be within the range of possible approval, a final approval hearing is scheduled and notice is provided to the class. *Id*.  The second step involves final determination, following a hearing at which pertinent evidence and any objections by class members may be considered, that the settlement is fair, reasonable and adequate from the standpoint of the class. *Id*. at §11.41.

In *Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the District Court described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law.  <u>Miller v. Republic National Life Insurance Company</u>, 559 F.2d 426 (5th Cir. 1977).  The Court is required to make a two-part determination that: 1) there is no fraud or collusion in reaching settlement, and 2) the settlement is fair, adequate and reasonable.  <u>Bennett v. Behring Corp.</u>, 737 F.2d 982 (11th Cir. 1984).

*Id*. at 1054.

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court. *Bennett*, 737 F. 2d at 987; *Flinn v. FMC Corp.,* 528 F.2d 1169 (4th Cir.1975), *cert. denied,* 424 US 967 (1976) . In making this determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the negotiating process by which the settlement was reached. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *cert. denied* 464 U.S. 818 (1983). The courts insist that a settlement be the result of "arm's length negotiations" effected by counsel possessed of "experience and ability . . . necessary to effective representation of the class' interests." *Id*. 698 F.2d at 74 (citation omitted). Once counsel's experience is established, courts give such counsel's "opinion . . . supporting the settlement . . . 'considerable weight'." This is because "the parties' counsel are best able to weigh the relative strengths and weaknesses of their arguments." *Id*.

### b.  Overview of *"Jiffy Lube Factors"*

The courts have considered several factors in determining whether a class settlement is fair, reasonable and adequate. *See, e.g., Troncelliti v. Minolla Corp*., 666 F.Supp. 750, 752-754 (D.Md.1987); *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 315-316 (D.Md.1979). The guideposts — referred to at times as the so-called *"Jiffy Lube* Factors"—  are derived from the seminal case of *In re Jiffy Lube Securities Litigation*., 927 F.2d 155 (4th Cir. 1991). The factors are:

> (1)    the posture of the case at the time settlement was proposed;
>
> (2)    the extent of discovery that had been conducted;
>
> (3)    the circumstances surrounding negotiations;

(4)     the experience of counsel;

(5)     the relative strength of the plaintiff's case on the merits;

(6)     the existence of any difficulties of proof or strong defenses the plaintiff is

        likely to encounter if the case goes to trial;

(7)     the anticipated duration and expense of additional litigation;

(8)     the solvency of the defendants and likelihood of recovery in a litigated

        judgment; and

(9)     the degree of opposition to the settlement.

*Id.* at 159.  *See*, *e.g.*, *Troncelliti v. Minolta Corporation*, 666 Fd. Supp. 750, 752-54 (D. Md.

1987); *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 315-16 (D. Md.

1979); *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 462 (2nd Cir. 1974); *In re A.H.

Robins Co.*, 880 F.2d 709, 748-49 (4th Cir.1989). Application of these factors shows that the

proposed settlement is fair, adequate, reasonable and in the best interest of the Settlement Class.

### 2.   *Even With a Strong Factual and Legal Case, Class Members Face a Significant Risk in Establishing Liability and Damages*.

Although the Class Representative believes that the claims she has raised are meritorious,

the Class Representative recognizes that ultimate success on the merits is by no means assured.

During the initial part of this litigation, Defendant had made clear that if this matter were contested,

they would vigorously challenge the merits of the claims of the Class Representative.  Defendant

has also contended and continues to contend that it has meritorious defenses to the asserted claims

[Settlement Agreement - Page 3].

### 3.   *The Settlement Terms and Conditions Offer Substantial Benefit to All Settlement Members Without the Necessity of a Claim Form*

Benefit to the Settlement Class is the fundamental test of the reasonableness of a

settlement. Here, the proposed settlement provides remedies directly responsive to the primary relief sought by the Class Representative. Under 15 U.S.C. §1692k(2)(B)(ii), the recovery of the Class is limited to the lessor of $500,000.00 or 1% of the net worth of the debt collector. Hence, the recovery is —in a word— modest in most FDCPA class actions.

### 4.    *The Time and Expense of Protracted Litigation Makes Settlement Appropriate*

Settlement promotes the interests of the litigants by saving them the expense of trial of disputed issues and reduces the strain on already overburdened courts. *See, Armstrong, supra,* 616 F.2d at 313; *Newman v. Stein,* 464 F. 2d 689, 691-92 (2d Cir.*), cert. denied, sub nom.; Benson v. Newman,* 409 U.S. 1039 (1972*); Enterprise Energy, supra,* 137 F.R.D. at 247-48 (class action settlement serves interests of both litigants and public by avoiding a time-consuming trial and appeal).  This position is especially compelling in light of the modest class size.

### 5.    *There is No Opposition to the Proposed Settlement.*

As noted above, the Settlement Class received notice of the proposed settlement by first class mail. In response to this notice program, no objections have been raised, and only four class members have opted out. Based upon this unanimously favorable response to the proposed settlement, there exists no reason to delay final approval.

### 6.    *Class Counsel Has Conducted Due Diligence Discovery and Has Negotiated the Settlement From a Well-Informed Perspective*

In the several months since this class action was initiated, the parties have developed substantial appreciation for the merits of their respective positions before reaching an agreement as to settlement. The respective parties have conducted due diligence investigation including the exchange of information relative to the class claims.

The parties entered into settlement negotiations starting in January, 2017.  In conjunction with the negotiations, the parties exchanged information regarding class size, scope and damages. The parties also exchanged documents relevant to the settlement discussions. Through this process, Class Counsel acquired sufficient knowledge and information to assess the merits of the claims and of potential settlement.

The settlement discussions were successfully concluded with a written term sheet drawn up by counsel. Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the agreement over the next several weeks.

### 7. *Class Counsel Believes That the Settlement is Fair, Reasonable and in the Best Interests of Settlement Class Members*

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312; *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993). In the instant action, Class Counsel has significant experience in litigating consumer class actions. *See*, e.g., *Picchi v. World Financial Network Bank,* 2015 WL 1201396 (S.D.Fla. 2015) [national TCPA settlement class];*Cruz v. Performant Recovery,* 2014 WL 943632 (S.D.Fla.2014) [nationwide settlement class of 29,000 student loan borrowers]; *Smith v. Toyota Motor Credit Corp.,* 2013 WL 1325460 (D.Md.2013) [settlement class under Maryland auto finance statute]; *Singleton v. General Revenue Corporation*, 2013WL 15118 (S.D. Fla. 2013) [nationwide settlement class certified under Fair Debt Collection Practices Act with over 150,000 class members]; *King v. Credit Card Receivables Fund,* 2013 WL 5761367 (S.D.Fla. 2013) [FDCPA settlement class]; *Whitaker v. Navy Federal Credit Union*, 2010 WL 3928616 (D. Md. 2010)[final approval of nationwide Article 9 class providing more than $50 million in debt relief;

trial court remarked that Declarant's "wealth of experience in litigating class actions under federal consumer protection statutes justifies his high rate."]; *Owens v. Samkle Automotive, Inc.,* 425 F.3d 1318 (11th Cir.2005)[landmark odometer act decision]; *Cannon v. Metro Ford*, 242 F. Supp. 2nd 1322 (S.D. Fla. 2002) [auto fraud/truth in lending]; *Brown v. SCI Funeral Services of Florida, Inc.,* 212 F.R.D. 602 (S.D. Fla. 2003) [truth in lending class action; identified by the South Florida Business Review as one of the major consumer class actions in 2003 with $3,000,000 in benefits to a class of over 9,000 consumers ]; *Jackson v. Southern Auto Finance Co.*, 988 So2d 721 (Fla.4th DCA 2008); *Westlake Financial Services v. Ray*, 923 So.2d 555 (Fla. 4th DCA 2006)*; Martinez v. FMS Inc.*, 2008 WL 4010101 (M.D. Fla. 2008); *Brown v. SCI Funeral Services of Florida, Inc.*, 212 F.R.D. 602 (S.D.Fla.2003); *Baez v. Wagner & Hunt, P.A.*, 442 F. Supp. 2d 1273 (S.D. Fla. 2006); *Jansen v. West Palm Nissan, Inc*., 2006 WL 1582068 (S.D. Fla. 2006); *Tyrell v. Robert Kaye & Associates, P.A.*, 223 F.R.D. 686 (S.D. Fla.2004) [class certification in FDCPA action]; *Westlake Financial Services v. Ray*, 923 So.2d 555 (Fla. 4th DCA 2006).

Based on the claims received by the Settlement Administrator, each participating Class Member will receive approximately $50.39 after payment of settlement administration expenses.

The benefits to the Class is in the range of settlements obtained in other FDCPA class actions similar to the instant proceeding. *See*, e.g., *Garza v. Mitchell Rubenstein & Associates, P.C.,* 2015 WL 9594286 (D. Md. Dec. 28, 2015) [preliminary approval of $12.50 per class member]; *Orloff v. Syndicated Office Systems,* 2004 WL 870691 (E.D.Pa.2004) [forgiveness of 10% of debt of class members resulting in $131 economic benefit to each class member]; *Rosenau v. Unifund Corp.*, 646 F.Supp.2d 743 (E.D.Pa.2009) [$100,000 settlement fund for claims made class of 6,028 members]; *Smith v. Professional Billing and Management Services*, 2007 WL 4191749 (D.NJ 2007) [$6.50 per FDCPA class member]; *Ewald v. West Asset Management, Inc.*, 2007 WL

3171397 (E.D.Wis. 2007) [$75 per class member who submitted a claim form]; *Ayzelman v.*

*Statewide Credit Services Corp.*, 242 F.R.D. 23 (E.D. NY 2007) [$12.01 per FDCPA class

member].

"While the opinion and recommendation of experience counsel is not blindly followed by

the trial court, such opinion should be given great weight in evaluating the proposed settlement."

*Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975). "Where experienced counsel have

engaged in arm's length negotiations to reach a settlement, the trial court is entitled to rely on their

judgment." *Spencer, supra,* ¶93,124 at 95,530; *see also Williams v. Vukovich,* 720 F.2d 909, 922-23

(6th Cir.1983)(court should defer to judgment of experienced counsel who has competently

evaluated the strength of his proofs); *Enterprise Energy, supra,* 137 F.R.D. at 247 (endorsement of

settlement by experienced counsel supported fairness, adequacy and reasonableness of settlement);

*Ohio Public Interest Campaign v. Fisher Foods,* 546 F.Supp.1, 11 (N.D.Ohio1982) (opinion of

counsel to be given great weight by the Court). Indeed, there is a "strong initial presumption" that

an arm's length settlement arrived at by experienced counsel, and premised upon sufficient

information to evaluate the claims at issue is fair. *See Feder v. Harrington,* 58 F.R.D. 171 (S.D.

N.Y.1972).[1]

Here, the settlement is the product of extensive, adversarial, arm's length negotiations

conduct by counsel experienced in all aspects of class action litigation, and particularly experienced

---

[1] The Court must also avoid judging the settlement against a hypothetical or speculative measure of what might have been achieved by the negotiators. "Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of facts and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement." *See, Officers for Justice v. Civil Serv.Comm'n,* 688 F.2d 615, 625 (9th Cir.1982).

in the FDCPA context. As discussed above, the proposed settlement offers the Settlement Class a substantial portion of the relief sought and which could be obtained at trial and is within the range of other similar settlements of FDCPA statutory damage class actions, including prior cases in this District [Murphy Declaration - ¶8]. Thus, in counsel's view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class [Murphy Declaration - ¶8].

By reaching the proposed settlement, the parties have dispensed with the need for further protracted litigation. Upon final approval, if given, the proposed settlement will have established a significantly faster and guaranteed favorable resolution of Settlement Class members' claims against Defendant.

### 8. *The Parties Negotiated the Proposed Settlement in Good Faith.*

The proposed settlement was negotiated between the parties at a settlement conference before Magistrate Judge Coulson. After the settlement conference, detailed settlement negotiations were conducted before the final terms of the Settlement Agreement were reached.  In order to avoid any appearance of conflict, Class Counsel did not discuss attorney's fees at the settlement conference until after resolution of the class claim [Murphy Declaration - ¶7].

The negotiation process was conducted in accordance with the "Standards and Guidelines for Litigating and Settling Class Actions" ("NACA Class Settlement Guidelines") promulgated by the National Association of Consumer Advocates ("NACA"). The NACA Class Settlement Guidelines were first published at 176 F.R.D. 375 (1997) and available in revised form at http://www.naca.net/assets/ media/revisedguidelines.pdf. Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy. *See, Cleveland Browns, supra,* 758 N.E.2d at 310.

18

## IV.  CONCLUSION

For all the foregoing reasons, Ms. Johnson respectfully requests that this Court approve the settlement as fair, adequate and reasonable.


/s/ Robert W. Murphy
ROBERT W. MURPHY
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Fax
rwmurphy@lawfirmmurphy.com and
rphyu@aol.com

KATHLEEN P. HYLAND
Hyland Law Firm, LLC
16 E. Lombard Street, Suite 400
Baltimore, MD  21202
(410) 777-8536 Telephone
(410) 777-8237 Fax
kat@lawhyland.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 31, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on James E. Dickerman, Esquire, Eccleston & Wolf, P.C., Baltimore-Washington Law Center, 7240 Parkway Drive, 4th Floor, Hanover, Maryland 21076-1378, telephone: (410) 752-7474, email: dickerman@ewmd.com, counsel for Defendant, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.


/s/ Robert W. Murphy
Attorney